UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAQUITA H.,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00258 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Laquita H. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on July 31, 2017. (Dkt. 6 at 19, 206-18).[1] In her application, Plaintiff alleged disability beginning April 5, 2013. (*Id.* at 19, 207). Plaintiff's application was initially denied on June 20, 2018. (*Id.* at 19, 122-33). A video hearing was held before administrative law judge ("ALJ") T. Kim on February 4, 2020. (*Id.* at 19, 41-85). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Orlando, Florida. (*Id*. at 41-85). On April 29, 2020, the ALJ issued an unfavorable decision. (*Id.* at 19-36). Plaintiff requested Appeals Council review; her request was denied on December 16, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 31, 2017, the application date. (Dkt. 6 at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: lumbar isthmic spondylolisthesis; lumbar and cervical radiculopathy; lumbar spinal

stenosis; intervertebral disc displacement of the lumbar and cervical region; cervical disc herniation and/or disc bulges at C2-C3, C3-C4, C4-C5, C5-C6, C7-T1, and T1-T2; cervical spondylosis, most prominent at C5-C6 and C4-C5; lumbago with left-sided sciatica; residual effects status-post spinal surgery; undersurface tear of the inferior margin of the mid-body of the left lateral meniscus; degenerative subcortical cystic changes of the inner anterior margin of the left lateral tibial plateau and posterior to the anterior cruciate ligament insertion; and status-post left knee anterior cruciate ligament sprain; severe left and moderate right carpal tunnel; and obesity. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, epidermoid cyst of finger of the right hand, dyslipidemia, hypertriglyceridemia, vitamin D deficiency, and depressive disorder with anxiety were non-severe. (*Id*. at 23-24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 25). The ALJ particularly considered the criteria of Listings 1.04, 11.08, 11.14, and Plaintiff's obesity in reaching his conclusion. (*Id.* at 25-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that:

> [Plaintiff] can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. Additionally, [Plaintiff] can only occasionally push or pull, or operate foot controls with both lower extremities. Similarly, [Plaintiff] can only occasionally kneel, crouch, stoop, balance, and crawl. [Plaintiff] can only occasionally climb stairs or ramps. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can never be exposed to unprotected heights or moving mechanical parts. Lastly, [Plaintiff] can tolerate occasional exposure to vibration.

(*Id.* at 28).

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a child monitor. (*Id.* at 34). Alternatively, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of information clerk, office helper, and retail trade sales attendant. (*Id.* at 35-36). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 36).

## II.     Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ did not properly evaluate the medical opinion evidence. (Dkt. 8-1 at 14-27). In response, the Commissioner contends that the ALJ properly assessed the medical opinions in the record. (Dkt. 10-1 at 12-21). As further explained below, the Court finds that remand is required.

The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on July 31, 2017, the new regulations, codified at 20 C.F.R. § 416.920c, apply.

Pursuant to the regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."

20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of

medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

In his decision, the ALJ considered medical opinion evidence from five of Plaintiff's treating or examining medical sources: Najmul Khan, M.D., Charles Amelemah, M.D., Daniel Wild, M.D., Jennifer Sperrazza, D.C., and Geoffrey Gerow, D.C. (Dkt. 6 at 33).

The ALJ described the opinions from these treating sources collectively in one paragraph:

> Based on their treating relationship with the claimant, Dr. Khan opined that the claimant would have no limitations as a result of her impairments, Dr. Amelemah opined the claimant would be limited in her ability to ambulate, and Dr. Wild opined the claimant would be limited to a greatly reduced level of sedentary exertional work activity based on his singular examination of the claimant and the record, none of which is consistent with the longitudinal record (Exhibit B12F at pp. 153-158; Exhibit B11F at pp. 2-3, 9-10; *see e.g.*, Exhibit B4F at pp. 8, 13, 23, 31, 55, 59- 60; see e.g., Exhibit B9F at p. 5; *see e.g.*, Exhibit B6F at pp. 18, 28, 36, 63; *see e.g.*, Exhibit B10F at pp. 42, 50, 77; see e.g., Exhibit B2F at p. 9; see e.g., Exhibit B18F at p. 6). Further, Chiropractors Sperrazza and Gerow opined the claimant would have a range of moderate to severe limitations in her ability to perform exertional and postural movements, which far exceed the residual functional capacity described herein that is consistent with the record of no less than a light work exertional limitation with only slight restrictions on utilizing hands and feet, with occasional restrictions on postural movements, and avoidance of work hazards (Exhibit B11F at pp. 4-8; see Exhibit B12F; *see e.g.*, Exhibit B4F at pp. 8, 13, 23, 31, 55, 59-60; *see e.g.*, Exhibit B9F at p. 5; *see e.g.*, Exhibit

- 8 -

> B6F at pp. 18, 28, 36, 63; *see e.g.*, Exhibit B10F at pp. 42, 50, 77; *see e.g.*, Exhibit B2F at p. 9; *see e.g.*, Exhibit B18F at p. 6).

(*Id.*).

The ALJ then continued on to assess all five opinions collectively:

> Further, the limitations opined by Dr. Khan, Dr. Amelemah, Dr. Wild, Ms. Sperrazza, and Mr. Gerow are inconsistent with and unsupported by the medical evidence and the observations of other treating physicians, fails to provide or reference diagnostic and supporting treatment to coincide with such alleged limitations, or are based on the claimant's self-proclaimed limitations inconsistent with the record (*See* Exhibit B12F; *see* B11F; *see e.g.*, Exhibit B4F at pp. 8, 13, 23, 31, 55, 59-60; *see e.g.*, Exhibit B9F at p. 5; *see e.g.*, Exhibit B6F at pp. 18, 28, 36, 63; *see e.g.*, Exhibit B10F at pp. 42, 50, 77; *see e.g.*, Exhibit B2F at p. 9; *see e.g.*, Exhibit B18F at p. 6). Accordingly, based on the overall consistency and supportability by the record and the residual functional capacity herein, the undersigned finds the aforementioned opinions unpersuasive, although the undersigned has considered any observations made upon examination when determining this claim.

(*Id.*).

The Court finds that the ALJ erred in his assessment of Plaintiff's treating providers' opinions. Although under the new regulations the ALJ is not required to give specific evidentiary weight to a particular medical opinion, he is still required to articulate how he considered the medical opinion, including explaining how he considered the "supportability" and "consistency" factors. Here, the ALJ did not meaningfully explain each opinion and instead, made conclusory statements that all of the treating providers' opinions were inconsistent with and unsupported by the medical evidence and observations of other treating physicians, failed to provide or reference diagnostic and supporting

treatment to coincide with such alleged limitations, or are based on the claimant's self-proclaimed limitations inconsistent with the record.

Collectively addressing medical opinions is not alone a basis for reversible error, *see Donald A. v. Saul*, No. 1:19-CV-01146-MJR, 2021 WL 672043, at *5 (W.D.N.Y. Feb. 22, 2021) (Plaintiff's contention that the ALJ was wrong to have spoken about the treating physicians collectively is not persuasive. The ALJ has an obligation to apply the regulatory factors to each opinion and explain his reasoning, but there is no requirement to restate the same reasoning repeatedly when it applies equally to more than one opinion."), but here, the ALJ's collective assessment of five providers' opinions does not permit the Court to discern how or why he discounted the particular providers' opinions, and is especially problematic because the opinions in question contained a wide variety of limitations and the ALJ found each of them unpersuasive, *see Craig J. v. Comm'r of Soc. Sec.*, No. 20-CV-946S, 2022 WL 683153, at *6 (W.D.N.Y. Mar. 8, 2022) ("This Court agrees with Plaintiff that by combining the examinations considered collectively it is unclear which opinion the ALJ criticized.").

For example, Dr. Khan opined in February of 2016 that Plaintiff would have no limitations as a result of her impairments. (Dkt. 6 at 628-29). Dr. Amelemah recommended that due to chronic back pain, Plaintiff should be limited to 20 hours of work per week. (*Id.* at 635). Dr. Wild, an independent medical examiner, opined that Plaintiff was capable of performing activities of daily living but should avoid lifting anything greater than 5 pounds with no prolonged walking or standing and no repetitive bending. (*Id.* at 790-95). Dr. Gerow, Plaintiff's chiropractor, opined in December of 2016 that

Plaintiff was unable to work (*id.* at 634), and in January and April of 2017 that Plaintiff was very limited in lifting, carrying, pushing, pulling, bending, stairs or other climbing (*id.* at 630-31, 632-33). Dr. Sperrazza, also a chiropractor, co-signed an opinion with Dr. Gerow in January of 2017, confirming Plaintiff's functional deficits and lack of motion. (*Id.* at 639-40).

While the ALJ's citation to record exhibits in connection with the discussion of the opinions is helpful, it is not a substitute for an adequate explanation as to how or if he credited any portions of the opinions in crafting Plaintiff's RFC. *Angela M. W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-06002 (JJM), 2023 WL 2673449, at *2 (W.D.N.Y. Mar. 29, 2023) ("The ALJ is required 'to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached.'" (quoting *Lopez obo Y.T. v. Commissioner of Social Security*, 18-CV-6704, 2020 WL 4504987, *2 (W.D.N.Y. 2020)); *Ayala v. Kijakazi*, No. 20-CV-09373 (RWL), 2022 WL 3211463, at *4 (S.D.N.Y. Aug. 9, 2022) ("An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision. . . . As noted in the Administration's revisions to the regulations, the articulation requirements in [the] final rules are intended to "allow a . . . reviewing court to trace the path of an adjudicator's reasoning." (quotations and citations omitted)); *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502AJNKHP, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) (finding insufficient for ALJ to simply "[cite] to some objective medical evidence in the record" to conclude that opinions of two providers were "consistent with

other evidence in the file" and "persuasive"), *report and recommendation adopted*, No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

That is not to say that the ALJ's rejection of the medical opinions was inherently improper or that the opinions should have been deemed persuasive. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." (citation omitted)). Rather, by finding each opinion in the record to be unpersuasive and yet not making clear which portions of the record supported the RFC, the ALJ leaves the Court unable to assess if the RFC is supported by substantial evidence. *See Joseph D. v. Kijakazi,* No. 21-CV-0394L, 2023 WL 3075953, at *3 (W.D.N.Y. Apr. 25, 2023) ("Furthermore, if it is unclear how or by what chain of logic the ALJ reached his RFC determination, meaningful review is impossible and remand is necessary, regardless of how thoroughly or accurately the ALJ summarized the medical evidence of record."); *Jennifer R. v. Comm'r of Soc. Sec.*, No. 21-CV-06177, 2023 WL 3005860, at *4 (W.D.N.Y. Apr. 19, 2023) ("Without some explanation from the ALJ as to the tether between her RFC and the medical opinions or statements from plaintiff, the RFC is based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand."); *Paul V. v. Comm'r of Soc. Sec.*, No. 20-CV-6887-FPG, 2022 WL 2114799, at *4 (W.D.N.Y. June 13, 2022) (remanding case where ALJ rejected the only medical opinion evidence on stress-related limitations without explaining how he sufficiently accounted for stress-related limitations in the RFC). In other words, the ALJ's conclusory analysis and

collective rejection of all of the opinions of record precludes the Court from undertaking meaningful review of his evaluation of the treating providers' opinions. *See, e.g., Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) ("[R]ather than analyzing the supportability and consistency factors as applied to Dr. Long's opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that Dr. Long's opinion was 'supported by the medical evidence of record and by her underlying examination.' Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand." (internal citation omitted)). Accordingly, remand is required. On remand, the ALJ must articulate in a more detailed fashion his assessment of Plaintiff's treating providers' opinions, including how he considered the "supportability" and "consistency" factors as to each opinion.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 1, 2023
Rochester, New York